**KENTUCKY ASSOCIATION FOR RETARDED CITIZENS, INC., et al., Plaintiffs-Appellants,**

v.

**Peter CONN, Secretary, Kentucky Department for Human Resources, et al., Defendants-Appellees.**

No. 80–3560.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 7, 1981.

Decided April 6, 1982.

Brian P. Lawlor, Legal Aid Soc., Inc., Richard McHugh, Henry A. Triplett, Louisville, Ky., Henry B. Hinton, Ky. Juvenile Justice Assistance Program, Morehead, Ky., Herbert B. Newberg, Philadelphia, Pa., for plaintiffs-appellants.

James A. Shuffett, Shuffett, Kenton, Curry & Karem, Cathy Lowe, Lexington, Ky., for Excepticon and Lorenzen.

Martin Z. Kasdan, Jr., Paul F. Fauri, Frankfort, Ky., for Conn, McElwain, Lewis and Pulliam.

Charles Wickliffe, Gen. Counsel, Frankfort, Ky., for McClure.

H. Hunter Durham, Columbia, Ky., for Lorenzen.

James D. Crawford, Joyce S. Meyers, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for amicus curiae Nat. Ass'n for Retarded Citizens.

Charles W. Dobbins, Jr., Louisville, Ky., guardian ad litem.

Steven J. Schwartz, Robert D. Fleischner, Western Mass. Legal Services, Northampton, Mass., for amicus curiae Mental Patients Advocacy Project.

William Bradford Reynolds, Asst. Atty. Gen., Leonard Rieser, Atty., U. S. Dept. of Justice, Washington, D. C., for amicus curiae U. S.

Before MERRITT and KENNEDY, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

PHILLIPS, Senior Circuit Judge.

This action was filed by the Kentucky Association for Retarded Citizens, Inc., a non-profit organization, and six individual plaintiffs. In their amended complaint, plaintiffs sought preliminary and permanent injunctions to halt the planned construction of a new Outwood facility for the mentally retarded at Dawson Springs, Kentucky, and preliminary and permanent injunctions "prohibiting Defendants from appropriating or spending any money for future construction, completion or purchase of non-community-based facilities for the mentally retarded and developmentally disabled of Kentucky. . . ." They also sought a number of other items of relief, including a declaratory judgment on several issues. The allegations of the complaint challenged virtually every aspect of the care of the mentally retarded at Outwood and charged violations of the First, Fifth, Eighth and Fourteenth Amendments to the United States Constitution as well as various state and federal statutes. Among the specific complaints were impermissible confinement, excessive use of chemical restraints (drugs) and physical restraints, inadequate toilet facilities, lack of individualized treatment, physical abuse, inadequate services and unsanitary living conditions. Central to the allegations in plaintiff's complaint was the assertion that all mentally retarded persons have the right to treatment in "the least restrictive environment possible," which, according to plaintiffs, is placement in small, community-based facilities and programs, approximating as nearly as possible living conditions found in the rest of society.

I

Jurisdiction was asserted under the Developmentally Disabled Assistance and Bill of Rights Act, 42 U.S.C. § 6001 *et seq.*; § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*; the various federal constitutional amendments named above; 28 U.S.C. § 1343(3) and (4); 42 U.S.C. § 1983, 28 U.S.C. §§ 2201 and 2202; and Kentucky statutes KRS 205.520, KRS 202B.010 *et seq.*, and KRS 210.005 *et seq.* under the doctrine of pendent jurisdiction.

Named as defendants were state officials who are officers or agents of the Kentucky Department of Human Resources (DHR), and representatives of Excepticon, Inc., the private corporation that manages the Outwood facility. Two residents at Outwood intervened as defendants, and the United States was allowed to participate as a litigating Amicus Curiae. On January 24, 1978, the district court certified the suit as a class action under Fed.R.Civ.P. 23(b)(2). The class consisted of "all persons who presently reside or may, in the future, reside at Outwood . . ." except the intervening defendants.

Chief District Judge Charles M. Allen conducted the non-jury trial which consumed 31 days during the period from October 19, 1978, to June 11, 1979. To protect the interests of all the mentally retarded persons within the plaintiff class, Judge

Allen appointed Charles W. Dobbins, Jr., of the Louisville Bar as their guardian ad litem on September 14, 1978. Excluded from his representation were the named plaintiffs, the intervening defendants and one plaintiff represented by the Legal Aid Society of Louisville. Judge Allen rendered final judgment on the merits on July 8, 1980.

## II

One of the major issues in this litigation was the propriety of the Commonwealth of Kentucky's proposed construction of a new residential care facility at Outwood. The new Outwood would be built on the same site as the existing Outwood in rural Western Kentucky. At the time of trial Outwood was a 300 bed residential facility for retarded persons, housing approximately 266 residents. Most of those residents were either profoundly retarded (estimated mental abilities of a child of 12 months or less) or severely retarded (estimated mental abilities of a child of two years or less). The original plans for the construction of a new Outwood called for a facility that would house 176 residents. After this case was appealed to this court, however, the State announced plans for an Outwood facility which would contain 80 beds and serve as the center for a new "community-based program."

Chief Judge Allen refused to enjoin the construction of the facility as originally proposed. A panel of this court initially granted an injunction pending appeal on September 10, 1981, but after considering additional facts it dissolved the injunction on October 8, 1981.

In his comprehensive opinion filed on March 21, 1980, and reported as *Kentucky Ass'n for Retarded Citizens v. Conn*, 510 F.Supp. 1233 (W.D.Ky.1980), Chief Judge Allen found that all present and future residents at Outwood are entitled to certain enumerated rights under 42 U.S.C. § 6010(3)(A) & (B). He concluded, however, that the minimum standards set out in 42 U.S.C. § 6010(3)(B)(i)–(vi) were being satisfied at the Outwood facility as of the date of his opinion. He found further that nothing in the Developmentally Disabled Assistance and Bill of Rights Act, 42 U.S.C. § 6001 *et seq.* (the DD Act) prohibited the construction of the proposed Outwood. In examining the DD Act, Chief Judge Allen stated that "Congress contemplated that institutional as well as residential programs for the handicapped would continue to be provided," and, therefore, the DD Act did not require the discontinuance of institutional programs such as the program at Outwood. In addition to declaring the plaintiff's rights under the DD Act, Chief Judge Allen found that the "involuntarily committed" residents of the Outwood facility (that is, almost all of the residents) had certain rights under KRS Chapter 202B, including the right to the "least restrictive alternative mode of treatment." Reference is made to the opinion of Judge Allen for a comprehensive statement and discussion of the many facts and issues involved in this complex litigation. Upon consideration of the briefs and oral arguments of counsel and review of the voluminous record in this case, this court concludes that the findings of fact of the district court on the merits are supported by substantial evidence and are not clearly erroneous, Fed.R.Civ.P. 52(a). However, this court retains jurisdiction over the issue of attorneys' fees, as set forth in Part VI of the opinion.

## III

In interpreting the DD Act, Chief Judge Allen refused to follow the majority en banc decision of the Third Circuit in *Halderman v. Pennhurst*, 612 F.2d 84 (3rd Cir. 1980). His decision is fully supported by the opinion of the Supreme Court in *Pennhurst v. Halderman*, 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981), reversing the Third Circuit, and remanding for further consideration. Under the *Pennhurst* decision, it is doubtful whether an individual has an implied private right of action under the terms of the DD Act, but we do not determine that issue in the present case, the DD Act does not require that the construction of the proposed Outwood be enjoined.

## IV

Appellants also rely upon § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, which makes it unlawful to discriminate against any otherwise qualified handicapped person in any program receiving federal aid. The regulations promulgated under Section 504 construe the statute to require affirmative action by the recipients of federal funds not only to prohibit discriminatory acts but also to take steps to remove the vestiges of past discriminatory practices. Appellants argue that the statute and regulations give the mentally retarded the right to treatment in the least separate, most integrated, "least restrictive alternative" setting. They claim that the "least restrictive alternative" is not institutionalized treatment in a rural setting such as Outwood, but rather is treatment in smaller, community-based group homes.

The district court ruled that Section 504 does not, by its language, "include a legislative mandate for deinstitutionalization." 510 F.Supp. at 1243. It did find, however, that the involuntarily committed mentally retarded have the right to the least restrictive mode of treatment under the statutory scheme of KRS 202B. Under the ruling of the district court, the plaintiffs were found to have rights under Kentucky law which are the equivalent of the rights asserted under Section 504.

The court ruled that, for some mentally retarded persons, the least restrictive alternative might be placement in a mental retardation residential treatment center, such as Outwood, instead of a community home. With that premise, the court held that an injunction prohibiting the construction of a new Outwood would not be justified. In particular, the court held that the severely and profoundly retarded persons might be placed in an institution, and that the placement decision is best left to mental health professionals rather than a court or a court-appointed official.

■ Like the district court, we do not read Section 504 to prohibit all institutionalization. The regulations promulgated under Section 504 contemplate that institutions may continue to house handicapped persons. 45 C.F.R. § 85.54. In *Southeastern Community College v. Davis*, 442 U.S. 397, 410, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979), the Supreme Court questioned the validity of regulations promulgated under Section 504 if they are construed to require substantial changes in existing programs other than changes necessary to eliminate discrimination. Assuming, *arguendo*, that the statute and regulations could be interpreted to require treatment in the "least restrictive alternative" setting as contended by appellants, the district court found that they had such rights, albeit under Kentucky law.

■ We agree that the least restrictive alternative for some severely and profoundly retarded persons may be institutionalization. This is true whether the right to treatment in the least restrictive alternative is required by state or federal law or both. Therefore a state's plan for mental health services may include plans for the rebuilding and upgrading of its institutional facilities. We see no reason why the Commonwealth of Kentucky may not determine to build a new, more modern institutional facility at Outwood to house those severely and profoundly retarded persons whose "least restrictive alternative" mode of treatment is institutionalization.

## V

■ The district court awarded the guardian ad litem a fee of $16,929.24 for services rendered and costs incurred by him, one-half to be paid by the plaintiffs and one-half by defendants. Plaintiffs do not contest the reasonableness of the fee allowed the guardian ad litem, but contend that the entire fee should be paid by the appellees. The record discloses that in the order entered September 14, 1978, appointing the guardian ad litem, the district court directed that "the fees and compensation of the guardian ad litem shall be paid in equal shares by the parties hereto and shall be fixed by the Court upon the termination of the guardian's duties." We conclude that the district court did not abuse its discretion

in taxing one-half of the guardian's fees *and* one-half of the costs of this litigation against the plaintiffs. In light of the district court's disposition of the case on the merits and the formal relief granted, we believe that the district court has equitably allocated guardian ad litem fees among the parties.

## VI

In a memorandum opinion rendered July 8, 1980, Chief Judge Allen denied the plaintiff's motion for attorneys' fees and costs of approximately $400,000. Appellants vigorously contend that this holding should be reversed and that they are entitled to costs and attorneys' fees as the "prevailing party" because of improvements in the conditions at Outwood since the filing of this lawsuit. They assert that the improvements were a direct result of this litigation.

The district court found that the central issue in this litigation was whether to halt the construction of the new Outwood facility. The court found that most of the relief granted to the plaintiffs by its decision was declaratory and not really contested by the defendants. The court found that since the defendants were already providing the treatment required by state and federal law at the time of trial, and because the plaintiffs did not prevail on the "central issue" in the lawsuit, i.e., the injunction against constructing the new Outwood, they were not the "prevailing party" within the meaning of 42 U.S.C. § 1988 and were not entitled to fees and costs.

As to the issues actually adjudicated below, we agree with the district court that the plaintiffs were not "prevailing parties." The record is clear that the district court granted very little of the formal relief sought by appellants.

Appellants assert, however, that conditions at Outwood improved markedly after the filing of the lawsuit and before trial, and, therefore, they prevailed even though they received little of the formal relief they requested. There is a dispute between the parties, however, about the true cause of the improvement in the conditions at Outwood.

There were numerous issues raised in this litigation. One of those issues was the standard of care and the adequacy of the facilities at the existing Outwood. The district court observed that there had been a basic upgrading of the Outwood facility since the filing of the lawsuit, and that the improvements at Outwood were probably due both to the filing of this lawsuit and to the promulgation of State regulations dealing with the care of the retarded.

In *Maher v. Gagne,* 448 U.S. 122, 129, 100 S.Ct. 2570, 2574, 65 L.Ed.2d 653 (1980), decided just a few days before Judge Allen's decision on attorneys' fees, the Supreme Court said:

We also find no merit in petitioner's suggestion that respondent was not the "prevailing party" within the meaning of § 1988. The fact that respondent prevailed through a settlement rather than through litigation does not weaken her claim to fees. *Nothing in the language of § 1988 conditions the District Court's power to award fees on full litigation of the issues or on a judicial determination that the plaintiff's rights have been violated.* Moreover, the Senate report expressly stated that "for purposes of the award of counsel fees, parties may be considered to have prevailed when they vindicate rights through a consent judgment *or without formally obtaining relief.*" S.Rep.No.94–1011, p. 5 (1976), U.S. Code Cong. & Admin.News 1976, pp. 5908, 5912. (Emphasis added.)

The House Committee Report also seems to require some award if a defendant alters its conduct significantly and if the lawsuit caused the change:

The phrase "prevailing party" is not intended to be limited to the victor only after entry of a final judgment following a full trial on the merits. It would also include a litigant who succeeds even if the case is concluded prior to a full evidentiary hearing before a judge or jury. If the litigation terminates by consent decree, for example, it would be proper to award counsel fees. A "prevailing" party should not be penalized for seeking an out-of-court settlement, thus helping to lessen docket congestion. *Similarly, after*

*a complaint is filed, a defendant might voluntarily cease the unlawful practice. A court should still award fees even though it might conclude, as a matter of equity, that no formal relief, such as an injunction, is needed.*

H.R.Rep.No.94–1558, 94th Cong., 2d Sess. 7 (1976) (citations omitted). (Emphasis added.)

The present state of the law is unclear respecting the definition of "prevailing parties" in actions such as this one, see *Long v. Bonnes,* —— U.S. ——, 102 S.Ct. 1476, 71 L.Ed.2d 681 (1982), and respecting the question of whether an award of attorneys' fees should be proportioned to reflect the extent to which a plaintiff has prevailed on the issues raised in the case. The Supreme Court has recently granted review in a case involving similar issues, *Hensley v. Eckerhart,* 664 F.2d 294 (8th Cir. 1981), *cert. granted,* —— U.S. ——, 102 S.Ct. 1610, 71 L.Ed.2d 847 (1982). Accordingly, the Court concludes that it should retain jurisdiction of the attorneys' fee issue presented here pending the decision of the Supreme Court in the *Hensley* case. As to the other issues presented by this appeal, the judgment of the district court is affirmed. Each party will bear his or its own costs on this appeal.