Samuel DOE, by his mother and next friend, Mary DOE, Plaintiffs,

v.

Al AUSTIN, Secretary for Cabinet for Human Resources, Defendant.

Civ. A. No. C 82–0738–L(A).

United States District Court,
W.D. Kentucky,
Louisville Division.

Nov. 20, 1986.

Kelly A. Miller, Legal Aid Society, Inc., Louisville, Ky., Richard W. McHugh, Intern. Union, UAW, Detroit, Mich., Nicholas J. Harding, Western Ky. Legal Services, Inc., Paducah, Ky., for plaintiffs.

Robert L. Heleringer, Louisville, Ky., for amicus curiae.

R. Hughes Walker, Gen. Counsel, Stanley A. Stratford, Asst. Gen. Counsel, William K. Moore, Frankfort, Ky., for defendant.

## MEMORANDUM OPINION

ALLEN, Senior District Judge.

This action is presented to the Court on the motion of the Plaintiff for preliminary injunction and summary judgment, and on the motion of the Defendant for the Court to reconsider its opinion and partial summary judgment of January 9, 1986.

Since the opinion of January 9, 1986 was rendered, the Kentucky legislature amended K.R.S. Chapter 202B dealing with the commitment of mentally retarded persons. 1986 Ky.Acts ch. 79 (HB 477) at p. 163. These amendments became effective on March 6, 1986 when approved by the Governor. Prior to the enactment of the amendments, the statute provided that "[a]ll rights guaranteed by K.R.S. Chapters 202A and 210 to mentally ill persons shall apply to mentally retarded persons." K.R.S. 202B.050 (1982). These rights included the procedural due process right to a preliminary and final judicial hearing in a district court of the Commonwealth of Kentucky to determine whether the mentally retarded individual should involuntarily be hospitalized in accordance with the applicable statutory criteria. K.R.S. 202A.051 and K.R.S. 202B.040 (1982).

The 1986 amendments (HB 477) effectively eliminated the rights of mentally retarded persons to a judicial hearing prior to involuntary commitment. K.R.S. 202B.050, as amended, reads as follows:

All rights guaranteed by K.R.S. Chapters 202A (other than those rights enumerated in K.R.S. 202A.026 and 202A.051) and K.R.S. Chapter 210 to mentally ill persons shall apply to mentally retarded persons. *Id.*

Furthermore, a new subsection (5) was added to K.R.S. 202B.040 (1986), which now reads as follows:

When a person who is alleged to be mentally retarded is involuntarily committed, there shall be a determination that:

(1) He is a mentally retarded person;

(2) He presents a danger or a threat of danger to self or others;

(3) The least restrictive alternative mode of treatment requires placement in a hospital or mental retardation residential treatment center;

(4) Treatment that can reasonably benefit the individual is available in the hospital or mental retardation residential treatment center; and

(5) The application by parents or guardians for placement for their retarded family member or ward in any mental retardation treatment center shall not be considered an involuntary commitment under this section, provided the retarded family member's application has been evaluated by an interdisciplinary team as defined in K.R.S. 202B.010 and the sub-

sequent admission fully complies with the provisions of K.R.S. Chapter 202B. Thus, the statute now contemplates that many, if not most, commitments of the mentally retarded shall not even be considered involuntary. A new section, K.R.S. 202B.045 (1986), spells out the requirements for admission and discharge:

(1) Admission:

(a) Patients shall be admitted only upon the approval of a physician. The facility shall admit only persons who have a physical or mental condition which requires developmental nursing services and a planned program of active treatment;

(b) The interdisciplinary team shall:

1. Conduct a comprehensive evaluation of the individual, not more than three (3) months before admission, covering physical, emotional, social, and cognitive factors; and

2. Prior to admission define the need for service without regard to availability of those services. The team shall review all available and applicable programs of care, treatment, and training and record its findings;

(c) If admission is not the best plan but the individual must be admitted nevertheless, the facility shall clearly acknowledge that the admission is inappropriate and initiate plans to actively explore alternatives;

(d) Before admission, the resident and a responsible member of his family or committee shall be informed in writing of the established policies of the facility and fees, reimbursement, visitation rights during serious illness, visiting hours, type of diets offered and services offered; and

(e) The facility shall provide and maintain a system for identifying each resident's personal property and facilities for safekeeping of his declared valuables. Each resident's clothing and other property shall be reserved for his own use.

(2) Discharge planning. Prior to discharge the facility shall have a postinstitutional plan which identifies the residential setting and support services which would enable the resident to live in a less restrictive alternative to the current setting. Before a resident is released, the facility shall:

(a) Offer counseling to parents or guardians who request the release of a resident concerning the advantage and disadvantages of the release;

(b) Plan for release of the resident, to assure that appropriate services are available in the resident's new environment, including protective supervision and other followup services; and

(c) Prepare and place in the resident's record a summary of findings, progress, and plans.

Finally, the amendments define the "interdisciplinary team" as:

the group of persons responsible for the diagnosis, evaluation and individualized program planning and service implementation for the resident. The team is composed of a physician, a psychologist, a registered nurse, a social worker, and other professionals, at least one (1) of whom is a qualified mental health professional, and may include the resident, the resident's family, or the guardian.

It will be recalled that, with regard to the statutory scheme in effect from 1982 until 1986, the previous opinion of the Court held that because it granted equal due process rights prior to involuntary commitment to both mentally retarded and mentally ill persons, the Commonwealth could not apply the statutes in a different way to these two classes of persons and thereby deprive the mentally retarded of their equal protection rights. That decision also held that it would not be a violation of the due process rights of mentally retarded persons for the state to commit such persons to mentally retarded institutions (hereinafter MRI) without a judicial hearing.

The Court, in that portion of the opinion relating to due process, relied heavily upon the decision of the Supreme Court in *Parham v. J.R.,* 442 U.S. 584, 99 S.Ct. 2493, 61 L.Ed.2d 101 (1979). However, we have re-examined the case of *Clark v. Cohen,* 613 F.Supp. 684 (M.D.Pa.

1985) and its predecessor, *Dixon v. Attorney General of Commonwealth of Pa.,* 325 F.Supp. 966 (M.D.Pa.1971), and now reach the contrary conclusion that it would be a violation of due process for Kentucky to involuntarily commit a mentally retarded person who is eighteen years of age or over without first awarding him a judicial hearing. Our opinion in this regard is strengthened by the very thorough analysis which District Judge Huyett undertook in *Clark v. Cohen, supra,* to show that there are indeed significant differences between the due process rights of adult mentally retarded persons and the rights of juveniles in a similar position. *Id.,* 613 F.Supp. at 697 *et seq.* As Judge Huyett noted,

> *Parham* dealt only with the commitment of minors by their parents or legal guardians. The Court's decision rested very heavily on the assumption that both parents and guardians act in the best interests of the child and that both have traditional authority over the raising of minors in their care. This aspect of *Parham* makes it inapposite to a situation involving someone who is not a minor. Once someone becomes an adult, one's parents lose that degree of authority found so crucial in *Parham.* Moreover, as even the *Parham* court found, there is a possibility (born[e] out by this case) that a 'ward' of the state who is committed may become 'lost in the shuffle.' *Id.* at 699, *citing Parham,* 442 U.S. at 619 [99 S.Ct. at 2513].

While an involuntary commitment to an MRI may be the most humane solution for a profoundly or severely retarded mentally retarded person who is unable to care for him or herself, it is still apparent that such commitment results in an extreme curtailment of personal liberty. Any decision by the state which results in such a profound deprivation of personal liberty must be accompanied by substantial due process safeguards, particularly where the person who is to be committed may be lacking in the ability to fully protect his or her procedural rights. We therefore hold that mentally retarded persons over eighteen years of age are entitled to a judicial hearing and

determination of the propriety of commitment, either prior to being involuntarily committed to an MRI or other facility, or as soon as practicable thereafter.

This holding applies equally to persons who are sought to be committed for the first time after they are eighteen and those who have been in the MRI prior to reaching eighteen but who then reach the age of eighteen. Of course, the state has the right to commit minors under the procedures that are now available under the statute and under the decision in *Parham.*

▪ We also disagree with the statute's definition of what constitutes an "involuntary commitment." K.R.S. 202B.040(5) treats the application by parents or guardians for placement of their retarded family member or ward in any mental retardation center as voluntary, and thereby strips the mentally retarded adult of his or her right to a *judicial* hearing and determination prior to commitment. As noted by this Court in *Kentucky Ass'n for Retarded Citizens v. Conn,* 510 F.Supp. 1233 (1980), *aff'd* 674 F.2d 582 (6th Cir.1982), *cert. denied* 459 U.S. 1041, 103 S.Ct. 457, 74 L.Ed.2d 609 (1982), many retarded adults are placed in MRI's by state appointed guardians who have no family ties with the mentally retarded person, and, even in those cases where the mentally retarded person is sought to be placed in an MRI by a relative or person who is also his legal guardian, the label of "voluntary commitment" cannot stand up in the face of the fact that the mentally retarded person is being committed without his or her consent. *Conn, supra,* 510 F.Supp. at 1248–49.

▪ With regard to the equal protection argument, it is true that courts have stated that there are significant differences between the mentally ill and the mentally retarded. *See Kremens v. Bartley,* 431 U.S. 119, 135–36, 97 S.Ct. 1709, 1718, 52 L.Ed.2d 184 (1977). However, the fact that there are significant differences between the mentally ill and the mentally retarded does not erase the principle that mentally ill persons and mentally retarded persons

are in similar positions: each has a fundamental constitutional right not to be placed in an institution until a judicial hearing has taken place, and appropriate findings have been made that they pose a danger, or threat of danger, to self or others, and have met the other requirements set out in the statutes. *See* K.R.S. 202B.040 (mentally retarded); K.R.S. 202A.026 (mentally ill).

The statute, K.R.S. 202B, specifically requires that where a person who is alleged to be mentally retarded is involuntarily committed, the following determination shall be made: that he is mentally retarded, presents a danger or threat of danger to himself or others; that the least restrictive alternative mode of treatment is in a hospital or mental retardation residence treatment center; and that treatment that can reasonably benefit the individual is available in the hospital or mental retardation treatment center. K.R.S. 202B.040 (1986). The statute, however, does not explicitly prescribe who makes the ultimate determination as to whether these criteria have been met. It does provide that patients shall be admitted only on the approval of a physician. K.R.S. 202B.045(1)(a). It also requires evaluation by the interdisciplinary team. K.R.S. 202B.010(1) and 202B.045. The statute, as amended, apparently even retains the requirement that the Secretary consent to the mentally retarded individual's commitment. K.R.S. 202B.030. However, the statute no longer grants mentally retarded persons the right, granted to mentally ill persons under K.R.S. 202A.051, of having a judicial determination made as to the propriety of their involuntary commitment. *See* K.R.S. 202B.050 (1986). K.R.S. 202B therefore violates the equal protection clause because there is no rational basis for distinguishing between the mentally retarded and the mentally ill with regard to their initial involuntary confinement. Both categories of persons who are eighteen years of age or over must receive a judicial hearing.

■ We next come to the question of what significance the difference between mentally retarded and mentally ill persons entails insofar as it affects their right to periodic review of their commitment. The present law grants the mentally ill person the right of judicial review at least every 360 days after he or she has reached adulthood because he or she cannot be committed for a longer period. K.R.S. 202A.051 (1986). However, the present law does not grant the mentally retarded person judicial review of his or her indefinite commitment. In this connection, it is recognized that mentally ill persons may recover from their mental illnesses within relatively short periods after their judicial commitment, whereas severely and profoundly mentally retarded persons very rarely experience such dramatic improvements in their condition. This fundamental difference seems to indicate that the state could prescribe different modes of due process for the review of the commitment of severely and profoundly mentally retarded adults versus the review of the commitment of mentally ill adults. However, it is not our duty to spell out at this juncture what such due process procedures might be, and we have not yet been cited to any statute or decision which the parties contend controls the review rights of the mentally retarded adults.

Our only function at this time is to hold that there must be some judicial review, at some appropriate time, of the commitment of persons who are eighteen years or older and who are mentally retarded. Suffice it to say that the statute, as it now stands, is unconstitutional with respect to the right to a judicial hearing of mentally retarded adults prior to their involuntary commitment. *Clark v. Cohen*, 613 F.Supp. 684 (M.D.Pa.1985).

We have this day entered a preliminary injunction and partial summary judgment in accordance with our opinion.

## PRELIMINARY INJUNCTION AND PARTIAL SUMMARY JUDGMENT

Plaintiffs having moved for a preliminary injunction and summary judgment, and defendant having moved the Court to reconsider its opinion and partial summary judgment of January 9, 1986, and the parties having fully briefed the issues, and the

Court being of the opinion that a hearing is unnecessary on the motion for a preliminary injunction,

IT IS ORDERED AND ADJUDGED as follows:

1. Defendants are enjoined from committing to a mentally retarded treatment center, or any other facility for treatment of the mentally retarded, any allegedly mentally retarded person who is over eighteen years of age without first granting him or her a judicial hearing to determine whether or not he or she should be committed under the standards set out in K.R.S. 202B.040(1–4). Defendants are likewise enjoined from continuing to confine any allegedly mentally retarded person in any such institution after he or she has reached his or her eighteenth birthday, unless there is a judicial hearing and a judicial determination made that the standards set out in K.R.S. 202B.040(1–4) have been met. Such judicial hearing shall take place not later than three months after the person already committed has reached the age of eighteen years. The confined mentally retarded person referred to in the preceding two sentences may continue to be confined between the time such person attains the age of eighteen years and the time he or she receives the required judicial hearing. Plaintiffs shall give security in the amount of $100.00. Rule 65(c), Fed.R.Civ.Pro.

2. Plaintiffs are further granted partial summary judgment on the issue of the unconstitutionality of K.R.S. Chapter 202B, as amended, such statute being in violation of the due process and equal protection rights of the Plaintiff as set forth in the accompanying memorandum opinion.

3. The parties shall have sixty (60) days from the date of this order in which to meet and confer for the purpose of submitting to the Court an agreed compliance plan for the provision of judicial proceedings in accordance with the opinion entered this day.