Samuel DOE, et al., Plaintiffs,

v.

Harry J. COWHERD, M.D., Secretary,
Cabinet for Human Resources,
Defendant.

Civ. A. No. C 82–0738–L(A).

United States District Court,
W.D. Kentucky,
at Louisville.

July 1, 1991.

Kelly A. Miller, Glenna Jo Curry, Legal Aid Society, Inc., Louisville, Ky., for plaintiffs.

Robert L. Heleringer, Louisville, Ky., for amicus parties.

E.D. Klatte, Cabinet for Human Resources, Office of the Counsel, Frankfort, Ky., for defendant.

## MEMORANDUM OPINION

ALLEN, Senior District Judge.

This class action pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983, challenging the procedures governing admissions and discharges at Kentucky's Mental Retardation Residential Treatment Centers [hereinafter "MRRTCs"] is submitted to the Court on plaintiffs' motion for summary judgment and preliminary injunction. For the reasons set forth below, the Court will enter partial summary judgment in favor of plaintiffs and a preliminary injunction in accordance with that partial judgment.

Plaintiff Doe filed this action in 1982 alleging that the procedures by which he and others had been admitted and retained at Kentucky's MRRTCs were unconstitu-

tional. In a memorandum opinion entered November 20, 1986, this Court held that mentally retarded adults are entitled to a "judicial hearing and determination of the propriety of the commitment," either prior to the involuntary commitment or as soon as practicable thereafter. *Doe v. Austin,*[1] 668 F.Supp. 597, 600 (W.D.Ky.1986), *aff'd in part, rev'd in part,* 848 F.2d 1386 (6th Cir.), *cert. denied,* 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 531 (1988).

We also held that contrary to the 1986 amendments to K.R.S. 202B, applications by parents or guardians for commitment of mentally retarded family members or wards are *not* voluntary commitments, *id.;* that the Equal Protection Clause requires a judicial hearing and determination prior to commitment, *id.* at 601; and that the Due Process Clause requires periodic review of any commitment decision. *Id.* We, therefore, enjoined the defendant Secretary from committing allegedly mentally retarded adults to any MRRTC without first providing a judicial hearing to determine whether such individuals should be committed. *Id.* at 602.

On appeal, the United States Court of Appeals for the Sixth Circuit agreed that commitments of mentally retarded adults on applications by parents or guardians are, in actuality, involuntary. *Doe v. Austin,* 848 F.2d 1386, 1392 (6th Cir.), *cert. denied,* 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 531 (1988). The Court of Appeals also agreed that Kentucky's procedures did not conform with the requirements of due process. *Id.* at 1394. As explained by the Sixth Circuit, although due process does not require full-blown judicial hearings prior to involuntary commitments of mentally retarded adults, due process does require that "mentally retarded adults in Kentucky receive, at a minimum," the six procedural safeguards established in *Vitek v. Jones,* 445 U.S. 480, 494–95, 100 S.Ct. 1254, 1264–65, 63 L.Ed.2d 552 (1980).[2] *Doe v. Austin,* 848 F.2d at 1393–95.

---

**1.** Defendant Cowherd, Secretary of the Cabinet for Human Resources, was substituted for his predecessor, Elbert Austin, pursuant to Fed. R.Civ.P. 25(d)(1).

**2.** In *Vitek v. Jones,* the Supreme Court affirmed the district court's decision that due process was

Finally, the Sixth Circuit held that because Kentucky provides judicial hearings for the admission of *mentally ill* adults to mental health facilities, equal protection requires that Kentucky also provide judicial hearings for the admission of mentally retarded adults to MRRTCs. *Id.* at 1394–95. Likewise, the Sixth Circuit held that as Kentucky provides periodic judicial review for committed mentally ill adults, equal protection requires that Kentucky also provide some form of periodic review for committed mentally retarded adults. *Id.* at 1394–96. As to the formulation of these review procedures, the Sixth Circuit remanded the matter on the grounds that such a task was best left to the district court as it would have the benefit of compliance plans submitted by the parties. *Id.* at 1396 n. 9.

Following the Supreme Court's denial of the Secretary's petition for a writ of certiorari, the parties began negotiating a compliance plan to implement the above-referenced holdings. In September 1989 they submitted a proposed Agreed Final Compliance Plan. This plan proposed procedures different from those enjoined and would have required Kentucky to give the same rights to mentally retarded adults with respect to involuntary commitments as is given to mentally ill adults.

However, in the meantime, the 1990 Kentucky General Assembly enacted House Bill 511 [hereinafter "HB 511"], an entirely new version of K.R.S. 202B for governing admissions and discharges of mentally retarded persons. Under HB 511, codified as the 1990 amendments to K.R.S. 202B, the *previous incorporation by reference in* K.R.S. 202B.050 to the rights of mentally

ill persons established in K.R.S. 202A was totally eliminated.

Plaintiffs contend that under HB 511, they "again lack procedural protections" in admissions and discharges at MRRTCs. According to the plaintiffs, under the new law the rights of mentally retarded adults to the safeguards found in the civil commitment procedures afforded to mentally ill adults under K.R.S. 202A have been impermissibly narrowed to such a degree that their constitutional rights are once again at issue. Plaintiffs' Mem. at 4.

■ Plaintiffs first challenge the voluntary admission procedure established in § 4(2) of HB 511 for admission of mildly or moderately mentally retarded adults without a judicial hearing. Section 4(2) provides, in pertinent part, as follows:

> Upon the recommendation or approval of the interdisciplinary team of an ICF/MR,[3] a physician may ... admit a mildly or moderately mentally retarded adult person who applies voluntarily [for admission] and who, in the opinion of the physician, possesses the mental capacity to give informed consent for admission.

Plaintiffs argue that this procedure conflicts with this Court's prior opinion and order and fails to provide procedures for safeguarding against the risk that a so-called voluntary admission would be "neither informed nor truly voluntary." Plaintiffs' Mem. at 8. Plaintiffs contend that the holding in the memorandum opinion entered January 9, 1986, was different from the holding in the memorandum opinion entered November 20, 1986, in that the latter opinion held that *all* mentally retard-

---

violated by a statute allowing the transfer of a prisoner to a mental facility upon a finding by a physician that the prisoner suffered from a "mental disease or defect" and could not be given "proper treatment" in the prison. *Doe v. Austin,* 848 F.2d 1386, 1393 (6th Cir.1988), quoting *Vitek,* 445 U.S. at 483–84, 100 S.Ct. at 1258–59. The Supreme Court also approved the following procedures: (1) written notice of proposed action; (2) a subsequent hearing at which evidence relied on is presented, and the prisoner is allowed to testify and to present documentary evidence; (3) an opportunity to present witness-

es on one's own behalf and to cross-examine adverse witnesses; (4) an independent decision-maker who also has the authority to implement the decision; (5) a written statement by the factfinder setting forth the evidence and the reasons for the decision and transfer, if any; and (6) qualified and independent assistance provided to the prisoner. *Doe,* 848 F.2d at 1393–94, citing *Vitek,* 445 U.S. at 494–95, 100 S.Ct. at 1264–65.

**3.** Although HB 511 amends MRRTC to ICF/MR [Intermediate Care Facility], this opinion will continue to use the MRRTC terminology.

ed adults, not only *mildly or moderately* retarded adults, were entitled to judicial hearings prior to admission. *Doe v. Austin,* 668 F.Supp. at 602.

■ After reviewing these opinions, this Court is convinced that its intent consisted of requiring judicial hearings only for those mentally retarded adults who could not *personally* apply with informed consent for voluntary admission. *See also,* Defendant's Mem. at 11–13. Therefore, the Court finds no conflict with its prior order. Likewise, the Court believes the new procedure under § 4(2) granting voluntary admissions where a staff physician makes the determination of an applicant's mental capacity for informed consent does not violate the Constitution.

■ Plaintiffs direct their next argument to the fact that HB 511 does not contain any provisions allowing voluntarily admitted residents to be released upon their own request. The absence of such a provision is in contrast to K.R.S. 202A.021(3) allowing the discharge of voluntarily admitted mentally ill patients who request release in writing. Plaintiffs contend that under § 4(3) of HB 511, mentally retarded adults who voluntarily enter MRRTCs surrender their ability to leave the facility voluntarily.

Section 4(3) provides as follows:

Upon recommendation or approval of the interdisciplinary team of an ICF/MR, the physician shall discharge any voluntarily admitted resident whose care and treatment in the ICF/MR is determined to be no longer necessary or advisable.

In response to plaintiffs' arguments and concerns, the defendant Secretary admits that:

he would have no authority to detain a voluntarily admitted patient who requested discharge without implementing the involuntary admission procedures contained in House Bill 511. The only basis for permitting the voluntarily admitted patient to receive treatment and habilitation ... would be the patient's consent.... Once that consent is withdrawn, defendant would have no choice but to immediately discharge the patient or institute involuntary admission proceedings.

Def.'s Mem. at 17–18.

The Secretary further admits that "persons voluntarily admitted to CHR's mental retardation facilities have a right to release upon their request." Def.'s Mem. at 18, citing *Kentucky Ass'n of Retarded Citizens v. Conn,* 510 F.Supp. 1233, 1249 (W.D.Ky.1980), *aff'd,* 674 F.2d 582 (6th Cir. 1982), *cert. denied,* 459 U.S. 1041, 103 S.Ct. 457, 74 L.Ed.2d 609 (1982). Despite this admission, the Secretary also argues that mentally retarded adults "have other constitutional and federal statutory rights not specified in House Bill 511," and the statute's silence as to those other rights does not mean that the Kentucky legislature intended to eliminate those rights "merely by failing to enumerate them." Def.'s Mem. at 18.

The Court disagrees. The right to release upon request is an extremely important right; and in this Court's opinion, it cannot be protected by statutory silence. Moreover, the Court also believes the Secretary's assurances that the right of release will be honored represents an inadequate basis for protecting the right, especially in the face of a statutory provision conditioning discharges of voluntarily admitted residents on actions by the facility's interdisciplinary team. Therefore, we hold that § 4(3) of HB 511 is unconstitutional to the extent that it governs the release of voluntarily admitted adults without any reference to such residents' right to release upon request.

■ Plaintiffs next argue that HB 511's use of the clear and convincing standard of proof for involuntary commitments of mentally retarded persons violates equal protection. For the involuntary commitment of mentally ill persons, the Kentucky legislature mandates that the manner of the proceedings and the rules of evidence shall be the same as in any criminal proceeding, including the evidentiary burden of beyond a reasonable doubt. K.R.S. 202A.076(2). The legislature's enactment in § 15(2) of the lower clear and convincing standard for

the civil commitment of mentally retarded individuals thereby denies protection provided by state law to the mentally ill. Plaintiffs contend that no legitimate state interest is served by the lower burden of proof placed upon Kentucky. Nor can the state, according to plaintiffs, demonstrate a rational basis for distinguishing between the mentally ill and the mentally retarded. We also agree with plaintiffs that the threat to personal liberty is identical for both classes of persons.

The Secretary defends the lower burden of proof by pointing to *Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979), which holds that the Due Process Clause of the Fourteenth Amendment requires the use of the clear and convincing standard of proof in civil commitment proceedings involving the mentally ill. *Id.* at 431–32, 99 S.Ct. at 1812. However, as this Court reads *Addington,* it does not prohibit the use of the criminal reasonable doubt standard. Rather, as stated by the Supreme Court, "the substantive standards for civil commitment may vary from state to state, [and] procedures must be allowed to vary so long as they meet the *constitutional minimum*." *Id.* at 431, 99 S.Ct. at 1812 (emphasis added). Here, the Kentucky legislature has elected to distinguish between mentally ill persons and mentally retarded persons, a situation which the *Addington* Court did not address.

This Court believes that *Doe v. Austin,* 848 F.2d at 1394, citing *Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985), mandates that mentally retarded persons be afforded the same protections as are mentally ill persons when facing involuntary commitment. Although differences admittedly exist between mentally ill and mentally retarded persons, "mere identification of differences is not enough; equal protection 'require[s] that a distinction made have some relevance to the purpose for which the classification is made.'" *Doe v. Austin,* 848 F.2d at 1394, quoting *Baxstrom v. Herold,* 383 U.S. 107, 111, 86 S.Ct. 760, 762–63, 15 L.Ed.2d 620 (1966).

Here, while it may be true that mental retardation is easier to diagnose than mental illness, and further, that it is easier for a factfinder to reach a decision with reference to mental retardation than with reference to mental illness, we believe such facts are of constitutional significance only in determining how often to review the commitment of persons who are mentally retarded.

Under Kentucky law, "when a proceeding may lead to the loss of personal liberty, the defendant in that proceeding should be afforded the same constitutional protection as is given to the accused in a criminal prosecution." *Denton v. Commonwealth,* 383 S.W.2d 681, 682 (Ky.1964); *see also, Messer v. Roney,* 772 S.W.2d 648 (Ky.App. 1989). In a criminal action, only two parties are involved: the government and the accused. If a judgment of acquittal is entered, the case ends. An appeal is not permitted. Here, we believe those protections which are given to mentally ill persons must be extended to mentally retarded persons facing civil commitment proceedings.

■ We, therefore, hold that § 15(2) of HB 511 allowing mentally retarded persons to be committed under the clear and convincing standard of proof is unconstitutional under the Equal Protection Clause. We also hold unconstitutional under equal protection and due process §§ 13, 15(3), and 22 of HB 511 allowing third parties, for example, parents or guardians, whose interests may be adverse to the mentally retarded person facing commitment, to participate in all aspects of the proceedings "as if" parties, including appeals of decisions they regard as adverse.

■ Finally, we address plaintiffs' argument that § 20 of HB 511 violates the Equal Protection Clause by denying to mentally retarded persons confronted with involuntary commitment proceedings legal services and representation provided by the Kentucky Department of Public Advocacy except as a last resort, that is, only after it is determined that private counsel is unavailable, either through court appointment or by inability to retain. This provision is

in contrast to K.R.S. 202A.121, which automatically gives to mentally ill persons facing involuntary commitment hearings legal counsel from the Department of Public Advocacy. Although mentally retarded persons or those acting on their behalf might prefer legal services from the Department of Public Advocacy, we do not believe that § 20's directives deprive mentally retarded persons from receiving effective legal assistance. As such, we do not regard § 20 as violative of the Constitution.

We have entered this date partial summary judgment for the plaintiffs in accordance with this opinion and a preliminary injunction in accordance with the partial summary judgment.

## PARTIAL SUMMARY JUDGMENT AND PRELIMINARY INJUNCTION

This action having come before the Court on plaintiffs' motion for summary judgment and preliminary injunction, and the parties having submitted their memoranda, responses and replies, and the Court having entered its memorandum opinion, accordingly,

IT IS HEREBY ORDERED AND ADJUDGED that:

1. Plaintiffs are granted partial summary judgment and a preliminary injunction in accordance with that judgment as set forth below in subsections 2 and 3.

2. Sections 13, 15(2), 15(3), and 22 of House Bill 511 are unconstitutional; and therefore, defendant is enjoined from applying or enforcing these provisions.

3. Section 4(3) of House Bill 511 is unconstitutional inasmuch as it provides for the discharge of voluntarily admitted mentally retarded adults without stipulating that such residents have a right to release upon their own request; and therefore, defendant is enjoined from using or applying this provision where a voluntarily admitted mentally retarded resident requests release.

4. Plaintiffs are denied their motion for summary judgment on the other challenged sections of House Bill 511.

5. Pursuant to Fed.R.Civ.P. 65(c), plaintiffs shall give security in the amount of One Hundred Dollars ($100.00).