Samuel DOE, by his mother and next friend, Mary DOE, on behalf of himself and all others similarly situated, Plaintiffs–Appellees,

v.

Harry J. COWHERD, Defendant–Appellant.

No. 91–5932.

United States Court of Appeals, Sixth Circuit.

Argued March 30, 1992.

Decided June 1, 1992.

Kelly A. Miller (argued and briefed), Glenna J. Curry, Ronald E. Marstin, Legal Aid Soc., Louisville, Ky., for plaintiffs-appellees.

Ryan M. Halloran, Gen. Counsel, E.D. Klatte, Staff Atty., Cabinet for Human Resources Office of the Counsel, Frankfort, Ky., William K. Moore, Staff Atty. (argued and briefed), Midway, Ky., for defendant-appellant.

Before: KEITH, Circuit Judge; LIVELY, Senior Circuit Judge; and COHN, District Judge.*

KEITH, Circuit Judge.

Defendant Harry J. Cowherd ("defendant") appeals the judgment of the district court, 770 F.Supp. 354, ordering the State of Kentucky to amend its release and admissions procedures for mentally retarded persons at the State's institutions. For the reasons outlined below, we AFFIRM in part and REVERSE in part.

I.

This is a class action brought pursuant to the Civil Rights Act of 1871, 42 U.S.C. § 1983. Plaintiff Samuel Doe ("plaintiff") is a mentally retarded adult who currently resides in a Kentucky Mental Retardation Residential Treatment Center ("RTC"). Plaintiff represents a class of citizens who are similarly situated to him as involuntarily committed adults in a Kentucky RTC. Defendant is Secretary of the Kentucky Cabinet for Human Resources. He appeals the July 1, 1991, judgment of the district court for partial summary judgment and preliminary injunction in favor of plaintiffs. The district court ordered the State of Ken-

* The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

tucky (the "State") to amend its procedures for admissions and release of both voluntary and involuntary adults at RTCs.

The issues raised by the instant case stem from issues previously addressed by this Court in *Doe v. Austin*, 848 F.2d 1386 (6th Cir.), *cert. denied*, 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 531 (1988). In *Austin*, we reviewed Kentucky's admission procedures for mentally retarded adults. Prior to our decision in *Austin*, Kentucky involuntarily committed mentally retarded adults to its RTCs without the benefit of a hearing. However, the State considered virtually all of its mentally retarded admissions to be voluntary. For example, the State treated those admissions that were initiated by the parent or guardian of the mentally retarded adult as voluntary. We held in *Austin* that mentally retarded adults are involuntarily committed when admission is made upon the application of a parent or guardian. We also held that mentally retarded adults are entitled to procedural due process prior to being committed involuntarily.

The State is again before us challenging the district court's expansion of the principles which we enunciated in *Austin*. There are three issues raised in this appeal. The first is whether the State must implement a written provision that adults who are voluntarily admitted into a RTC must be released upon their request. Second, we are asked to determine whether the State must satisfy the "beyond a reasonable doubt" burden of proof in order to involuntarily commit a mentally retarded adult. The final issue is whether the State is prohibited from allowing relatives of a mentally retarded adult to join as parties in an action to involuntarily commit the mentally retarded person. The district court answered each of the above questions affirmatively. We reverse the district court's judgment as to the first issue, and affirm on each of the remaining issues for the following reasons.

## II.

In 1990, the Kentucky General Assembly enacted House Bill 511 which revised Ky. Rev.Stat.Ann. Chapter 202B. Our decision in *Austin* was based on the provisions of Chapter 202B, which governed admissions and discharges of mentally retarded persons.

Plaintiff's first challenge relates to § 4(3) of H.B. 511, which establishes that:

Upon recommendation or approval of the interdisciplinary team of an ICF/MR, the physician shall discharge any voluntarily admitted resident whose care and treatment in the ICF/MR is determined to be no longer necessary or advisable.

According to plaintiff, the statute is constitutionally infirm because it fails to provide for the release of a voluntarily admitted patient upon their request. The State asserts that although the statute does not explicitly provide for voluntarily admitted patients to be released upon request, the State does recognize such a right. The district court stated, however, that "[t]he right to release upon request is an extremely important right; and ... it cannot be protected by statutory silence." Accordingly, the district court held that § 4(3) of H.B. 511 is unconstitutional to the extent that it fails to provide for the release of voluntarily admitted adults upon their request.

The State contends that we lack jurisdiction to decide this issue because the instant case fails to present an actual case or controversy. It contends that this Court may strike down legislation only at the instance of one who is himself immediately harmed or immediately threatened with harm by the challenged action. *See Poe v. Ullman*, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961). We agree.

As a threshold matter, the class represented by plaintiff consists of involuntarily admitted patients. The challenged action affects mentally retarded adults who are voluntarily committed to a RTC. Therefore, the class represented in this action cannot be affected by the challenged action. Moreover, plaintiff has not shown that any voluntarily admitted patient has requested and been denied release from a Kentucky institution. Thus, there is no evidence of any harm whatsoever. Accord-

ingly, we agree that there is no actual case or controversy arising from the instant action, and we reverse the district court's decision on this issue.

█ The next issue relates to H.B. 511's use of the clear and convincing standard of proof for involuntary commitments of mentally retarded adults. The State uses the beyond a reasonable doubt standard of proof for involuntary commitments of mentally ill adults. Plaintiff successfully argued before the district court that the lesser standard of proof for the mentally retarded violates equal protection.

At the time we decided *Austin,* Ky.Rev. Stat.Ann § 202B.050 provided that:

All rights guaranteed by [Ky.Rev.Stat.] Chapters 202A (other than those rights enumerated in [Ky.Rev.Stat.] 202A.026 and 202A.051) and [Ky.Rev.Stat.] Chapter 210 to mentally ill persons shall apply to mentally retarded persons.

Ky.Rev.Stat.Ann. Chapter 202A provided for substantial procedural due process prior to the involuntary commitment of mentally ill patients. The rights for mentally ill patients included the right to a preliminary hearing before a person could be involuntarily committed to a state institution, the right to a final hearing and the right to a jury trial. The statute also provided for the right to counsel, the right to testify, present witnesses and cross-examine adverse witnesses, and the right to be present during proceedings.

In *Austin,* we specifically addressed the question of whether mentally retarded adults are entitled to procedural due process prior to being involuntarily committed. Because the State provided for mentally ill adults to receive a hearing prior to being involuntarily committed, we questioned whether there was any rational basis for denying a hearing to mentally retarded adults. The State failed to show any rational basis for differentiating between mentally retarded and mentally ill adults in the provision of a hearing prior to involuntary commitment. Accordingly, we held that equal protection required that the mentally retarded be given a hearing prior to their involuntary commitment. We fail

to see any reason for the State to now believe that a substantially lessened burden of proof should govern those hearings for the mentally retarded.

The State asserts that there are several relevant differences between mentally ill and mentally retarded persons which provide a basis for the different standards of proof. It is clear that "the mere identification of differences is not enough; equal protection 'require[s] that a distinction made have some relevance to the purpose for which the classification is made.'" *Austin,* 848 F.2d at 1394, citing *Baxstrom v. Herold,* 383 U.S. 107, 111, 86 S.Ct. 760, 762–63, 15 L.Ed.2d 620 (1966). We do not believe that there are any differences between these two classes or the purposes for their commitment which are relevant to the due process which they are entitled to receive.

The State asserts that the purposes for committing mentally retarded persons are different from the purposes for committing mentally ill persons. For example, the State asserts that mental retardation is a permanent, incurable condition, but mental illness can be, and usually is, successfully treated. According to the State, mentally retarded persons are not "treated" but are "habilitated" on a continuing basis. The State asserts that the services at mental retardation facilities are less "intrusive" than those provided for mentally ill patients. The State also contends that there is a stigmatization associated with mental illness that does not attach to mental retardation.

The State's assertions are unsupported by any evidence in the record. There is no evidence whatsoever to show that mentally retarded persons are not "stigmatized," or that the treatment that they receive is less "intrusive" than the treatment administered to mentally ill persons. There is also dispute as to whether mentally retarded persons can be treated so as to improve their condition. The mere assertion of distinctions is clearly insufficient to justify lessened standards to prove that a mentally retarded person should be institutionalized.

Moreover, the issue raised in this case relates to the *liberty* of mentally retarded persons who are threatened with involuntary commitment. Regardless of the asserted benefits of institutionalization, it nevertheless results in the loss of personal liberty. Yet the State seeks to curtail the liberty interests of the mentally retarded under more liberal standards than those standards used for mentally ill adults.

Kentucky law provides that "when a proceeding may lead to the loss of personal liberty, the defendant in that proceeding should be afforded the same constitutional protection as is given to the accused in a criminal prosecution." *Denton v. Commonwealth*, 383 S.W.2d 681, 682 (Ky.App. 1964). The mentally ill and mentally retarded are identical insofar as they lose their personal liberty by involuntary institutionalization. Accordingly, we hold that equal protection requires that the reasonable doubt standard of proof must apply in proceedings to involuntarily commit mentally retarded adults in Kentucky.

We also affirm the district court's holding that Kentucky's practice of allowing third parties to participate in the involuntary commitment proceeding of mentally retarded adults violates equal protection and due process. In *Austin*, we held that the decision to commit a mentally retarded adult is not within the discretion of his or her parents or guardians. *Austin*, 848 F.2d at 1386. Moreover, as recognized by the district court, these parties' interests may be adverse to the person facing commitment. Thus the inclusion of third persons as parties to the action (including the right to appeal decisions which they find adverse) imposes a greater burden than is imposed on similarly situated mentally ill adults. The State has advanced no rational basis for this distinction.

### III.

For the above stated reasons, we AFFIRM in part and REVERSE in part.